Isidob Wasservogel,
Spec. Ref. Plaintiff seeks to recover from defendant Triangle Sheet Metal Works, Inc., the sum of $51,000 for property damage which resulted from a fire caused by the alleged negligence of one of this defendant’s employees. Prior to trial, the action against defendant Baker-Smith & Co., Inc., was discontinued.
Plaintiff is the owner of a six-story office building and penthouse located between 39th and 40th Streets, West of Fifth Avenue, Boroug’h of Manhattan, City of New York. On or about April 7,1955, a fire occurred on the roof of said premises where an air conditioning tower was being erected. At the time of the fire, four workmen were present on the roof. Two of them were employees of Baker-Smith So Co., Inc., the mechanical contractor for the tower installation. The other two men were employees of defendant, a tinsmith firm doing the metal work on this construction job. It is plaintiff’s contention that one Ryan, an employee of defendant, while using an acetylene torch to burn a hole into the sheet metal on the southwesterly side of the tower for the attachment of a ladder, as required by the plans and specifications, negligently caused the fire which resulted in the damage complained of herein.
In the opinion of the court, plaintiff failed to prove satisfactorily that Ryan or any other of defendant’s employees caused the damage here involved. No witness called by either party connected any individual directly with the commencement of the fire. Plaintiff’s two witnesses, who, significantly, were employees of Baker-Smith, merely stated, in effect, that they saw Ryan use an acetylene torch to burn a hole in one of the metal panels on the south side of the tower and that later on. *745 “ smoke was coming out of the hole that had been burned.” It is also significant that, although both of these witnesses had used an acetylene torch to fabricate some pipe for the tower shortly before the fire, they both denied using same at or about the time the fire started. Ryan, likewise, denied that he was working at the site of the fire or that he ever used an acetylene torch in any of the work he performed on the roof of plaintiff’s premises. He emphatically stated that he was not licensed to use such a torch and that he worked “ only with an electric arc welder.”
An examination of the documentary evidence adduced upon the trial shows that considerable fire damage occurred in that part of the tower immediately adjoining the “ air conditioning cell ” in front of which Baker-Smith’s employees were working. It is quite possible, therefore, that a carelessly placed acetylene torch being used by these employees could have started the fire which plaintiff attempts to attribute solely to the negligence of Ryan. Thus, as above noted, the credible testimony and documentary evidence does not warrant the conclusion that negligence on the part of defendant was the producing cause of the damage sustained by plaintiff.
In any event, plaintiff’s contributory negligence here bars any recovery by it. The record conclusively shows that the air conditioning tower being installed upon plaintiff’s order failed to comply with the safety requirements of the Administrative Code of the City of New York (§§ C26-679.0, C26-88.0).
The pertinent sections of the code provide as follows: “ § C26-679.0: Cooling towers. — Cooling towers erected after January first, nineteen hundred thirty-eight, above any roof shall be of incombustible material, except the drip bars, which may be of wood.”
Section C26-88.0 defines “ incombustible material ” as “ any material which will not ignite nor actively support combustion in a surrounding temperature of twelve hundred degrees Fahrenheit during an exposure of five minutes and which will not melt when the temperature of the material is maintained at nine hundred degrees Fahrenheit for a period of at least five minutes.”
The only departure from the safety standards prescribed by the foregoing sections of the Administrative Code is that the drip bars may be made of wood. It is undisputed here that the drip bars in the tower ordered by plaintiff (which, parenthetically, were supplied by one of its own subsidiaries) were made of a plastic material. The testimony by experts upon the trial clearly shows that such plastic drip bars did not conform to the *746 definition of ‘ ‘ incombustible material ’ ’ as above set forth. Even plaintiff’s own expert stated that the plastic of which the drip bars here involved were made ‘1 will ignite and burn at temperature below 1000 degrees.” Likewise, defendant’s expert testified that in tests which he conducted upon the plastic material, it failed to comply with the specifications fixed by the provisions of the city code. Plaintiff, therefore, must be deemed to have contributed to the cause of the fire here involved by requiring the use of such plastic material in place and instead of other “incombustible material,” as prescribed by the applicable law.
In view of the foregoing, it is unnecessary for the court to discuss at any length any of defendant’s other affirmative defenses. It is sufficient to note that it is extremely doubtful whether, at the time of the loss occasioned by the fire, plaintiff was the true owner of the property destroyed by said fire. Moreover, it is also doubtful whether all necessary parties to this action have been joined by plaintiff.
Judgment, accordingly, is rendered in favor of defendant Triangle Sheet Metal Works, Inc.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.